IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JIMISON ERIK COLEMAN, | § | |
| MOVANT, | § | |
| | § | |
| V. | § | CASE NO. 3:17-CV-2602-L-BK |
| | § | (CRIMINAL CASE NO. 3:14-CR-374-L-4) |
| UNITED STATES OF AMERICA, | § | |
| RESPONDENT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Jimison Erik Coleman's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 was referred to the United States magistrate judge for case management, including the issuance of findings and a recommended disposition. As detailed herein, the motion should be **DENIED**.

**I. BACKGROUND**

Coleman pled guilty, pursuant to a plea agreement, to conspiring to possess with intent to distribute heroin and was sentenced to 192 months' imprisonment—substantially above the advisory guidelines range of 37-46 months—based on his stipulation that the medical examiner found that Rian Lashley died from the toxic effects of heroin and that Lashley's death resulted from the use of the controlled substance distributed by Coleman. *United States v. Coleman*, No. 3:14-CR-374-L-4 (N.D. Tex., Feb. 22, 2016); Crim. Doc. 197 (Judgment); Crim. Doc. 120 at 2-3 (Factual Resume). Coleman's subsequent appeal was dismissed on his own motion. Crim. Doc. 231.

Through counsel, Coleman filed this timely Section 2255 motion, alleging ineffective assistance of trial counsel and requesting an evidentiary hearing. Doc. 1 at 4; Doc. 2 at 25. The

Government has filed a response opposing Section 2255 relief and Coleman has filed a reply. Doc. 15; Doc. 19. Upon review of the pleadings and the applicable law, the Court concludes that Coleman's claims are waived and, in the alternative, fail on the merits because he cannot show he was prejudiced by counsel's performance.

## II. ANALYSIS

To succeed on his ineffective assistance claim, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697. To establish deficient performance, the movant must show that his attorney's actions "fell below an objective standard of reasonableness." *Id.* at 688. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that, "under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689.

Under *Strickland*'s prejudice prong, the movant additionally must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Thus, the movant must "affirmatively prove," not just allege, prejudice. *Id.* at 693. Further, "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

In the sentencing context, to establish prejudice, the movant must demonstrate that his sentence was increased by the deficient performance of defense counsel. *Glover v. United*

*States*, 531 U.S. 198, 200, 203-04 (2001). As noted in *Glover*, "any amount of actual jail time has Sixth Amendment significance." 531 U.S. at 203.

### A. Coleman's Allegations

Faced with significant evidence against him and the possibility of being sentenced to life in prison, Coleman accepted the Government's offer to plead guilty to Count One of the Indictment, alleging conspiracy to distribute heroin, thereby capping his sentencing exposure at 20 years' imprisonment. In exchange, the Government agreed (1) to dismiss Counts Two and Three of the Indictment—which carried maximum sentences of life imprisonment and directly alleged Lashley's death as an element of the offense—and (2) to recommend a three-level guideline reduction for acceptance of responsibility. Crim. Doc. 62 at 2-3; Crim. Doc. 119 at 4-5; Crim. Doc. 197 at 1. In conjunction with his guilty plea, Coleman signed a Factual Resume in which he stipulated that, *inter alia*, (1) "he routinely distributed heroin and other drugs" in Dallas and California," (2) he distributed "China White" heroin to Lashley through a coconspirator and Lashley died the same day "after being injected with the heroin that she purchased from him," (3) an autopsy performed at the Southwestern Institute of Forensic Sciences ("SWIFS") concluded that "Lashley died as a result of the toxic effects of heroin," and (4) "death resulted from the use of the controlled substance that was distributed." Crim. Doc. 120 at 2-3.

Coleman, dissatisfied with his sentence, now asserts that counsel rendered ineffective assistance in failing to conduct an "independent forensic investigation" of the cause of Lashley's death before advising him to plead guilty and stipulate to the medical examiner's finding that Lashley died from use of the heroin that Coleman conspired to distribute. Doc. 1 at 4; Doc. 2 at 18. He argues that counsel unreasonably accepted and relied on the autopsy report from SWIFS, which concluded that Lashley died because of the toxic effects of heroin. Doc. 2 at 18.

According to Coleman, if counsel had investigated further, he would have discovered—as four medical experts have since opined—that Lashley did not die from the toxic effects of heroin. Doc. 19 at 4. *See also* Doc. 2-1 (Dr. Nancy L. Jones' report); Doc. 2-9 (Dr. Stephen J. Cina's report); Doc. 9-1 (Dr. Jessie Adame's report); Doc. 20-1, (Dr. Alan Wu's report). Coleman avers that had he been aware of this information, he would have "question[ed] the veracity of the medical examiner's conclusion that …Lashley died from a heroin overdose" and would not "have stipulated that …Lashley died from the toxic effects of heroin." Doc. 2-10 at 4 (Coleman's Decl. ¶ 12); Doc. 2 at 20.

Coleman also contends that counsel's failure to investigate further deprived him of the opportunity to move to withdraw from that stipulation, which he claims "unquestionably prejudiced" him at sentencing, since the Court explicitly relied on the stipulation in imposing an upward variance and sentencing him to 192 months imprisonment. Doc. 2 at 21-24. Coleman requests that the Court "re-sentence him anew without consideration of the false and unreliable conclusion that Lashley's death was caused by the toxic effects of heroin." Doc. 2 at 26.

### B. Coleman's Ineffective Assistance Claims are Waived

A guilty plea generally waives constitutional deprivations occurring prior to the plea, *Haring v. Prosise*, 462 U.S. 306, 319–20 (1983). Moreover, a knowing and voluntary guilty plea waives all nonjurisdictional defects that occurred prior to the plea. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea … ."); *United States v. Bell*, 966 F.2d 914, 915 (5th Cir. 1992) ("by entering a plea of guilty, a

defendant ordinarily waives all non-jurisdictional defects in the proceedings below"). Such waiver includes all claims of ineffective assistance of counsel, except those relating to the defendant's entry of a guilty plea. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

Here, Coleman does not question that his guilty plea was knowing and voluntary. Coleman specifically states that he "is not challenging his guilty plea," but only a "component of his plea agreement—the stipulation related to Lashley's cause of death." Doc. 19 at 7. Instead, Coleman apparently seeks to retain all the advantages of his plea bargain and have a sentencing do-over. Consequently, the fact that Coleman's voluntary and intelligent plea waived all of his pre-guilty plea claims, including his ineffective assistance of counsel claims, defeats his challenge. Coleman's allegation that counsel's failure to investigate Lashley's cause of death caused him to stipulate in the Factual Resume to the medical examiner's cause-of-death finding, even if believed, is a nonjurisdictional defect that occurred prior to his guilty plea. Thus, it is waived.

Coleman also asserts that counsel's failure to investigate deprived him of the opportunity to withdraw the cause-of-death stipulation after the entry of the guilty plea. However novel this approach, Coleman provides no authority for it. Initially, Coleman cited *United States v. Lopez*, 385 F.3d 245, 250-55 (2d Cir. 2004), "for the proposition that he could have challenged the plea agreement versus [the] plea itself," and opined that counsel's failure to investigate deprived him of that opportunity. Doc. 2 at 21. But he admits in his reply that "*Lopez* does not directly address a defendant's ability to withdraw from only part of a plea agreement," as he supposedly seeks to do here. Doc. 19 at 7; *Lopez*, 385 F.3d at 247-48 (permitting defendant to withdraw from plea agreement in its entirety to move for downward departure and appeal sentence). Thus, it appears, Coleman has abandoned his initial claim.

Coleman argues for the first time in his reply that the "parties are not free to stipulate—as part of a plea agreement—to factual matters which are false" and submits "that is what the Lashley cause of death stipulation represents." Doc. 19 at 7. He cites *United States v. Ready*, 82 F.3d 551, 559 (2d Cir. 1996), *superseded on other grounds*, *United States v. Cook*, 722 F.3d 477, 481 (2d Cir. 2013), for the proposition that parties cannot enter into illegal or unconscionable provisions as part of a plea agreement, and contends that "it would have been unlawful and against public policy for the Government to argue that Lashley died from the toxic effects of heroin in the face of virtually incontrovertible scientific evidence that Lashley's death was not caused by the toxic effects of heroin." Doc. 19 at 6. Notwithstanding the exaggerated significance of subsequent opinions as "incontrovertible," Coleman's recast claim alleges only a nonjurisdictional defect that occurred prior to his guilty plea, which, as previously stated, is waived.

### C. Coleman's Claims Nevertheless Lack Merit

Essentially, Coleman attempts to attack the credibility of the medical examiner's report that concluded that Lashley died from the toxic effects of heroin by arguing it is false in light of contrary opinions that Coleman subsequently obtained, including that of Dr. Nancy L. Jones, Doc. 2-9. However, at sentencing, defense counsel actually presented Dr. Jones' report that purported to contradict the medical examiner's finding. Nevertheless, the Court found the report of the medical examiner (Dr. Urban) credible. As explained at sentencing, the Court had a sound basis to accept Dr. Urban's findings over those of Dr. Jones:

> At this stage, I seriously question whether someone who did not examine the body, someone who did not conduct an autopsy would be in the same position as the person who actually conducted the autopsy. The autopsy was signed off by a doctor at the medical examiner's office and also signed off by Dr. Jeffrey Barnard, who is the chief medical examiner for Dallas County.

> So I know that Dr. Jeffrey Barnard is highly qualified. I have had the opportunity to deal with him before, and what I am saying is based upon what he has done before, I know personally that he conducts a very thorough examination, and he would not put his name to something unless he thought this was a sound basis for it.

Crim. Doc. 225 at 196-97. Without a doubt, the Court is solely responsible for resolving issues of credibility and determining the weight to be given any evidence offered at sentencing. *See United States v. Johnson*, 823 F.2d 840, 842 (5th Cir. 1987) ("To be sure, a federal district judge has wide discretion in the kind and source of information he considers in imposing sentence.") (alterations and quotation marks omitted) (citing *United States v. Garcia*, 693 F.2d 412, 416 (5th Cir.1982).

Moreover, the additional reports of Drs. Cina, Adame, and Wu, are merely cumulative of Dr. Jones', since, like Dr. Jones, neither Cina, Adame nor Wu examined Lashley's body and were each relegated to the review of the SWIFS autopsy report. Doc. 2-9 at 3; Doc. 9-1 at 2; Doc. 20-1 at 1. As such, Coleman cannot demonstrate that counsel's failure to present the reports/opinions of Drs. Cina, Adame, and Wu, caused his sentence to be increased. Additionally, because of the great weight the Court obviously gave the medical examiner's opinion regarding Lashley's cause of death, Coleman also cannot demonstrate that the sentence the Court imposed would have been different without his stipulation that Lashley died from the toxic effects of heroin. Indeed, the Court practically said as much:

> The last sentence of the factual resume, Coleman further admits that death resulted from the use of the controlled substance that was distributed. I say that because when you look at the nature and circumstances of the offense, there is really no dispute that a death occurred, and there is no use for anyone attempting to minimize that. A life was lost, and that is one of the circumstances the Court can consider under Paragraph 4(a)(1) of 3553 Title 18.

\*\*\*

> When a person is engaged in certain conduct, he or she is responsible for the actions of his consequences. I do not think a sentence of eight years or 96 months would be fair and just under the circumstances of this case. I said it once, and I will say it again. We are dealing with the loss of life and that counts for a lot. The thing about these sentences is that perhaps nobody is really satisfied with the sentence that the Court imposes, but the Court has to do what it thinks is right under the totality of the facts and the law.

Crim. Doc. 225 at 235-36.

Thus, Coleman wholly fails to demonstrate prejudice as a result of counsel's allegedly deficient performance.

### III. EVIDENTIARY HEARING

Coleman requests an evidentiary hearing, arguing that his claims are supported by "reliable, third party, scientific opinion[s]." Doc. 2 at 25; Doc. 19 at 2. However, "[w]hen the files and records of a case make manifest the lack of merit of a Section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008) ("Once … independent evidence is presented, '[a] motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief.'" (quoting *United States v. Bartholomew,* 974 F.2d 39, 41 (5th Cir. 1992))).

As detailed here, Coleman's claims lack merit for reasons wholly supported by the record. *Cf. Cavitt*, 550 F.3d at 442 (remanding for evidentiary hearing because videotape evidence constituted "independent indicium of the likely merit of [movant's] claims" of ineffective assistance of counsel); *see also United States v. Allen*, 918 F.3d 457, 461 (5th Cir. 2019) (remanding for evidentiary hearing because there was "some indication that the government did not discharge its burden" of informing district court of defendant's cooperation

in the murder investigation). Consequently, an evidentiary hearing is not required in this case.

## IV. CONCLUSION

For the foregoing reasons, the Section 2255 motion should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on March 2, 2020.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, the basis for the objection, and the place in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).